## NATIONAL LABOR RELATIONS BOARD

v.

## NATIONAL SHOES, Inc. et al.
### No. 70, Docket 22787.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1953.

Decided Dec. 15, 1953.

Samuel M. Singer, George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Elizabeth W. Weston, Washington, D. C., John C. Rohrbaugh, Zanesville, Ohio, for petitioner, National Labor Relations Board, Washington, D. C.

Conrad & Smith, New York City, for respondents, Samuel Rubin, Seymour J. Ugelow, Isadore Fried, New York City, of counsel.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and BRENNAN, District Judge.

BRENNAN, District Judge.

The National Labor Relations Board by petition, pursuant to Section 10(e) of the National Labor Relations Act, as amended, hereinafter referred to as the Act, 29 U.S.C.A. § 151 etc., seeks enforcement of its order of March 11, 1953 (103 N.L.R.B. No. 58). The order requires respondents to cease and desist from refusing to bargain collectively with the United Wholesale, Retail and Department Store Union of America, C. I. O., Local 586, as the exclusive representative of employees at respondent's store at Syracuse, New York, and grants other related relief.

The order is based upon findings and conclusions of the Trial Examiner adopted by the Board to the effect that the respondents may properly be considered as a single employer in the proceeding before the Board, and that they refused to bargain collectively with the Union, in violation of Section 8(a) (5) of the Act, and thereby interfered with, restrained and coerced employees in the exercise of rights guaranteed in Section 7 of the Act, in violation of Section 8(a) (1). The application is opposed by respondents generally upon the contention that the evidence affords no proper basis for petitioner's order, in that respondent National Shoes, Inc. is not shown to be an employer within the meaning of the Act, and that the evidence is insufficient in law to sustain the Board's findings as to respondents' refusal to bargain collectively. The evidence is undisputed. The litigants differ only in the conclusions to be drawn therefrom. The pertinent facts will be concisely stated.

National Shoes, Inc. is a corporation with its principal place of business at the city of New York. It is engaged in the distribution of shoes and related products, and has about eighty retail outlets; all of which it owns and operates. Such outlets are located in several states. Its products are also distributed through other retail outlets, among which is the respondent, National Syracuse Corporation, which was apparently organized about 1951, and which maintains a retail store at Syracuse, New York. Commencing about July, 1951, the Union undertook to organize the employees at the National Syracuse Corporation, Syracuse, New York. About August 9, 1951, at a conference in New York City, the Union was recognized as the bargaining agent, and negotiations looking to the signing of a labor contract were begun. The negotiations were friendly, but were actually nonproductive. Agreement appeared to be imminent on several occasions, but obstacles to the actual signing of the con-

tract were raised by the employer. On November 29, 1951, the Union filed a charge with the Board, which in effect related to respondent's refusal to bargain with the Union. Further negotiations were attempted, and the charge was withdrawn. Negotiations proceeded intermittently but without conclusion. The present complaint was issued on September 24, 1952. A hearing was held on October 20, 1952. The general counsel called two witnesses; Mr. Mac Siegel, who testified generally as to the corporate set-up and business relationships of the two respondents, and Mr. Maurillo, a regional director of the Union, who gave evidence as to the details of the negotiations. The respondents offered no evidence. The Trial Examiner filed an intermediate report containing his findings, conclusions and recommendations, which were adopted by the Board. The order challenged here was signed, and the petition for the enforcement thereof was later filed in this court.

■ An examination of the record discloses that the business and intercorporate relationships of the respondents are closely integrated. Both corporations have the same president and secretary-treasurer. These two individuals were the organizers and sole stockholders of the National Syracuse Corporation. The Board of Directors of National Syracuse is composed of the same individuals, who are the officers of National Shoes. The labor policy of the National Shoes, Inc. is determined by the officers among whom is witness Mac Siegel, who determines the labor policy of the respondent, National Syracuse Corporation. Some employees of National Syracuse have been hired at New York City. Counsel for both corporations conducted the bargaining negotiations here, some of which were held at New York City. National Syracuse purchases its merchandise from National Shoes, Inc. The relationship between the two corporations, as disclosed above, amply supports the conclusion that the two respondents here involved may be considered as a single employer. N. L.

R. B. v. Stowe Spinning Co., 336 U.S. 226, (See note 2, page 227), 69 S.Ct. 541, page 542, 93 L.Ed. 638; N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831; N. L. R. B. v. Somerset Classics, Inc., 2 Cir., 193 F.2d 613; N. L. R. B. v. Don Juan, Inc., 2 Cir., 178 F.2d 625.

■ The legality of the finding that the respondents have refused to bargain collectively is primarily one for the evaluation of evidence. Section 8(d) of the Act, 29 U.S.C.A. § 158(d), is the Congressional enactment which requires good faith in collective bargaining negotiations. The same provision by its terms does not require either party to agree to a proposal or require the making of a concession. Judicial interpretation does not disclose the confinement of the statutory requirement within precise limits. " * * * a statutory standard such as 'good faith' can have meaning only in its application to the particular facts of a particular case." N. L. R. B. v. American National Insurance Company, 343 U.S. 395, at page 410, 72 S.Ct. 824, at page 832, 96 L.Ed. 1027. It follows that sincerity of effort and intention to arrive at and consummate an agreement are requirements of statute. Their absence constitutes an unfair labor practice. Here the employer has made no clear refusal to negotiate or bargain. Bargaining negotiations were engaged in over a long period of time. The failure of such negotiations is not in itself determinative. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893. However, the duty to bargain " * * * requires more than a willingness to enter upon a sterile discussion of union-management differences." N. L. R. B. v. American National Insurance Company, supra, 343 U.S. at page 402, 72 S.Ct. at page 828.

■■ The problem is essentially to determine from the record the intention or the state of mind of respondents in the matter of their negotiations with the Union. In this proceeding, as in many others, such a determination is a

question of fact to be determined from the whole record. Evidence was offered and received as to the details of the negotiations, a portion of which covered a period of time prior to six months before the charge was filed. This evidence was principally admissible as a history and as a background for the evaluation of evidence of events and occurrences within such six months' period.

■ The record in this case discloses none of the hostility or bitterness which is sometimes engendered in labor-management disputes. The appearance of bargaining was leisurely maintained by respondents, but the making of a contract was postponed by the reopening of items already settled, and the posing of new demands. A recital of the course of negotiations would only mean the recitation of the detailed evidence in the record. Long delays unaccounted for in the matter of correspondence and the preparation of documents, the postponement of meetings of the negotiators for weeks at a time, and the reopening of questions previously settled, all appear in the record, and all occur or are caused by the actions of the respondents. The effect of such actions individually is not the test of good faith bargaining. The impact of all of such occasions or actions, considered as a whole, and the inferences fairly drawn therefrom collectively, may properly afford a basis for the finding of the Board. N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131. Depending as it does upon an appraisal of the whole evidence as it relates to labor-management relations, such a finding may not be lightly disregarded. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ Here also it appears that while negotiations concerning the question of wages were in progress, without consent or knowledge of the Union, the respondents raised the wages of the employees at Syracuse to fifty dollars per week, when negotiations had not proceeded to the point where a wage scale of forty-nine dollars per week could be embodied in a contract. In August, 1952, it also appears that while negotiations were in progress the wages of a salesman-employee were raised by the unilateral action of the respondents. Such action in itself constitutes an unfair labor practice, Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, at page 685, 64 S. Ct. 830, 88 L.Ed. 1007; See also N. L. R. B. v. Dealers Engine Rebuilders, 8 Cir., 199 F.2d 249 and cases cited at page 252, and is evidence of a failure to bargain in good faith. N. L. R. B. v. Century Cement Mfg. Co., Inc., 2 Cir., 208 F.2d 84.

■ The findings and order of the Board are supported by substantial evidence, and the petition is, therefore, granted.