**NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**FEED AND SUPPLY CENTER, INC.,** Respondent.

No. 17084.

United States Court of Appeals
Ninth Circuit.

Sept. 5, 1961.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Mar-

cel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Morton Namrow and Jules Gordon, attys., National Labor Relations Board, Washington, D. C., for petitioner.

Eli A. Weston, Boise, Idaho, for respondent.

Before ORR, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

This case is before this Court upon petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, as amended, 61 Stat. 136, as amended by 73 Stat. 519, 29 U.S.C.A. § 151 et seq., for enforcement of its order charging the respondent with unfair labor practices. The order issued April 19, 1960, ordered the respondent to:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with General Teamsters, Warehousemen & Helpers Union, Local No. 483, as the exclusive bargaining representative of all mill workers, mixermen, merchandisers, truckdrivers, and warehousemen employed at its Twin Falls, Idaho, plant, excluding all office clerical employees, professional employees, managers, and assistant managers, guards, and supervisors, as defined in the Act, concerning rates of pay, wages, hours of employment and other conditions of employment.

"(b) Refusing to submit to the Union a copy of its health and welfare plan.

"(c) * * *."

The order also required respondent, upon request, to bargain collectively with the union as the exclusive bargaining representative of all of the employees in the unit above described; upon request to furnish to said union a copy of respondent's health and welfare plan; to post appropriate notices; and to notify the Regional Director within ten days from the date of the order what steps had been taken to comply with the order.

This Court has jurisdiction as the unfair labor practice occurred at respondent's plant in Twin Falls, Idaho.

The respondent does not question the appropriateness of the bargaining unit, nor does it question the representative capacity of the union.

■ The Board found that respondent had violated Section 8(a) (5) and (1) of the Act [1] by refusing to bargain with the union in good faith, and in refusing to submit to the union copy of respondent's health and welfare plan.

The factual background leading up to the issuance of the Board's order may be summarized as follows: Shortly after the certification of the union as the bargaining representative of the specified group of respondent's employees, the union submitted a written contract proposal to respondent. The negotiator of the union endeavored to bargain with respondent through one Eli A. Weston,

---

[1] The relevant provisions of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq.), are as follows:

Rights of Employees

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, * * * for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

Unfair Labor Practices

"Sec. 8(a). It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

*    *    *    *    *

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

who is respondent's attorney and representative. Upon failure of the respondent to respond to the contract proposals of the union, the union filed a charge with the Board's regional office on December 19, 1958, asserting that respondent had failed to bargain. Shortly after the filing of the charge, respondent made a wage offer to the union, which the members of the bargaining unit rejected on January 19, 1959. In February 1959 respondent, through Weston, submitted a new wage proposal to the union, and in a letter dated February 24, 1959, advised the Board's agent who had been investigating the union charge, as follows:

"Further with reference to our conversation, I talked to Mr. Baldin [union's negotiator] again this noon and offered to pay 6¢ an hour for six months with an additional 6¢ after six months or pay 8¢ at this time plus union security provisions for a one-year contract.

"There doesn't seem to be much dispute about vacations, holidays, etc., and he is to let me know if this offer is acceptable. Otherwise we will negotiate further."

As a result of this evidence of good faith bargaining the union's charge was dismissed by the Board's regional office. In the interim the members of the bargain unit voted to accept respondent's offer of 6¢ with an additional 6¢ after six months. Thereafter Weston was advised by the union negotiator that the members of the union had accepted the offer, and Weston promised to draft a contract embodying the terms agreed upon and to "talk to his client." At the time that the union negotiator notified Weston that the members of the union had accepted respondent's offer the parties had not reached agreement on a health and welfare plan for the employees, and in support of respondent's position that its health and welfare plan was superior to one proposed by the union, Weston, at the Union's request, reiterated an earlier promise to furnish a copy of respondent's plan for the union's inspection.

Thereafter, the union frequently urged Weston to fulfill the commitments which had been made. Weston's persistent reply was "that he had to talk to his client" and that respondent "was in the process of financing difficulties." Respondent failed to submit in writing a draft of the contract embodying the terms of the wage increase agreed upon, failed to furnish its health and welfare plan for the union's inspection, failed to institute the wage increase, and failed to resume negotiations with the union. On June 15, 1959, the union filed new charges against respondent, alleging respondent's refusal to bargain in good faith.

At the hearing before the trial examiner of the Board respondent offered no witnesses and no testimony concerning the "financing difficulties" of respondent. In National Labor Relations Board v. Stanislaus Implement and Hardware Company, Ltd., 9 Cir., 1955, 226 F.2d 377, we stated at page 380:

"An unpretending, sincere intention and effort to arrive at an agreement is required by statute; the absence thereof constitutes an unfair labor practice. N. L. R. B. v. National Shoes, 2 Cir., 1953, 208 F.2d 688; N. L. R. B. v. Shannon, 9 Cir., 1953, 208 F.2d 545; N. L. R. B. v. Nesen, 9 Cir., 1954, 211 F.2d 559.

" 'Good faith' is a state of mind which can be resolved only through an application of the facts in each particular case. N. L. R. B. v. American National Insurance Co., 1952, 343 U.S. 395, 410, 72 S.Ct. 824, 96 L.Ed. 1027."

In the instant case the record as a whole abundantly supports the inference which was drawn by the trial examiner and affirmed by the Board that respondent refused to bargain with the union in good faith.

█ It is undisputed that respondent never fulfilled its promise to furnish the union with a copy of its health and welfare plan for the purpose of substantiating its claim that the respondent's plan was more favorable to the employees

than the union's plan. Such information was relevant to the issues on which the parties had not yet reached agreement and about which they were obligated to bargain. Failure of respondent to furnish such information in these circumstances was violative of Section 8(a) (5) and (1) of the Act. See N. L. R. B. v. John S. Swift Company, Inc., 7 Cir., 1960, 277 F.2d 641; N. L. R. B. v. F. W. Woolworth Co., 1956, 352 U.S. 938, 77 S.Ct. 261, 1 L.Ed.2d 235, reversing 9 Cir., 1956, 235 F.2d 319; and International Woodworkers of America v. N. L. R. B., 1959, 105 U.S.App.D.C. 37, 263 F.2d 483, at page 484.

The petition for the enforcement of the Board's order is granted.